COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA              :     **INFORMATION**

    - v. -                           :
                                            10 Cr. 1198
VINCENT L. LEIBELL, III,              :
                                            Eginton, J
               Defendant.          :

- - - - - - - - - - - - - - - - - - - X

### Count One

### (Obstruction of Justice)

The United States Attorney charges:

#### Relevant Individuals and Entities

1.  VINCENT L. LEIBELL, III, the defendant, is the County Executive-elect for Putnam County, New York, and a New York State Senator. LEIBELL was first elected to the New York State Senate in 1995 and his district covers all of Putnam County and parts of Westchester and Dutchess Counties. Prior to being elected to the Senate, LEIBELL served as a New York State Assemblyman from 1983 through 1994 and in that role represented the 90th and 91st Assembly Districts.

2.  In or about 1999, a private not-for-profit organization (the "NFP") was established and thereafter controlled, in part, by VINCENT L. LEIBELL, III, the defendant. The stated purpose of the NFP was, among other things, to fund and develop senior housing in Putnam County.

3. At all times relevant to this Information, ATTORNEY #1 was an attorney licensed to practice law in the state of New York who provided legal services to the NFP and to the Putnam County government.

## Background

4. As a New York State Senator, VINCENT L. LEIBELL, III, the defendant, was responsible for, among other things, voting on and approving the operating budget of the State of New York. During all times relevant to this Information, a portion of the New York State operating budget included discretionary funding for projects within a particular Senator's home district known as "member item grants." Member item grants were awarded by individual Senators to their constituents and local governments within their home district.

5. During the years 2000 through 2010, the NFP received millions of dollars in member item grants sponsored by VINCENT L. LEIBELL, III, the defendant.

6. Beginning in or about April 2010, the Federal Bureau of Investigation ("FBI"), and later the Internal Revenue Service ("IRS"), were assisting a federal grand jury sitting in White Plains, New York to investigate allegations that VINCENT L. LEIBELL, III, the defendant, had demanded and received unlawful payments from individuals doing business in Putnam County ("the pending federal investigation"). Among other things, FBI and IRS agents were investigating allegations that LEIBELL told ATTORNEY

2

#1 that he would cause the NFP to withhold payment of invoices submitted to the NFP by ATTORNEY #1 for legal services that ATTORNEY #1 had rendered to the NFP unless ATTORNEY #1 agreed to return half of the invoiced amount to LEIBELL in cash.

7. In or about late April 2010, VINCENT L. LEIBELL, III, the defendant, became aware of the pending federal investigation. On several occasions between late April and early June 2010, LEIBELL met with ATTORNEY #1 to discuss the pending federal investigation.

8. On or about May 17, 2010, ATTORNEY #1 was subpoenaed to testify before the federal grand jury in White Plains, New York in connection with the pending federal investigation. Shortly thereafter, on or about June 6, 2010, at the request of VINCENT L. LEIBELL, III, the defendant, ATTORNEY #1 and LEIBELL met on a street in Carmel, New York to discuss the pending federal investigation and statements ATTORNEY #1 would make to the grand jury and to those federal agents assisting the grand jury. Unbeknownst to LEIBELL, the meeting between LEIBELL and ATTORNEY #1 was recorded.

9. During the June 6, 2010 meeting, VINCENT L. LEIBELL, III, the defendant, and ATTORNEY #1 discussed the events surrounding cash payments that ATTORNEY #1 previously had made to LEIBELL. During this conversation, ATTORNEY #1 expressed concern to LEIBELL that federal agents were questioning the substantial

cash withdrawals ATTORNEY #1 made from his personal bank accounts, which cash ATTORNEY #1 had used to pay LEIBELL.

10. During the June 6, 2010 meeting, VINCENT L. LEIBELL, III, the defendant, repeatedly directed ATTORNEY #1 to lie to federal investigators and to deny that ATTORNEY #1 had given cash to LEIBELL. At various points during the June 6, 2010 meeting, in an effort to coax ATTORNEY #1 to lie to investigators, LEIBELL repeatedly emphasized to ATTORNEY #1 the importance of LEIBELL and ATTORNEY #1 remaining consistent in their false denials: "You and I say there was never any cash relationship. Period .... Since you and I are in agreement, it didn't happen .... All I know is, as long as you and I are consistent, I'm fine, you're fine. There was never any cash between you and I, Okay?"

11. During the June 6, 2010 meeting, VINCENT L. LEIBELL, III, the defendant, also directed ATTORNEY #1 to provide false explanations to federal agents for the cash withdrawals reflected in ATTORNEY #1's bank records. Specifically, LEIBELL instructed ATTORNEY #1 to falsely tell investigators: (A) that ATTORNEY #1 used the cash he withdrew from his bank accounts to pay for family expenses such as caring for his aged mother, (B) that ATTORNEY #1 withdrew the cash after the September 11th attacks at the suggestion of government leaders so that he would have substantial cash on hand in the event of another terrorist attack, and (C) that ATTORNEY #1 withdrew the cash because he wanted to keep the cash on hand in case he became ill.

4

## Statutory Allegation

12. On or about June 6, 2010, in the Southern District of New York and elsewhere, VINCENT L. LEIBELL, III, the defendant, did corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede, the due administration of justice, to wit, LEIBELL directed ATTORNEY #1 to falsely tell federal agents (A) that he had never given cash to LEIBELL, (B) that he had withdrawn cash from his bank account in order to care for his aged mother, and (C) that he had withdrawn cash from his bank account in order to have cash on hand in case of an emergency, in order to impede the ability of federal agents to discover the cash payments.

(Title 18, United States Code, Section 1503.)

## Count Two

### (Subscribing To False and Fraudulent U.S. Individual Income Tax Returns)

The United States Attorney further charges:

### Background

13. The allegations contained in paragraphs one through eleven of this Information are realleged and incorporated as though fully set forth herein.

14. At times relevant to this Information, ATTORNEY #2 was an attorney licensed to practice law in the state of New York and was a partner of a law firm based in Westchester County, New York

(the "Law Firm") that provided legal services to the Putnam County government.

15. In or about February 2000, VINCENT L. LEIBELL, III, the defendant, had ATTORNEY #2 enter into an agreement in which ATTORNEY #2 and the Law Firm would pay consulting fees to LEIBELL. By late 2001, ATTORNEY #2 and the Law Firm had paid LEIBELL under the agreement and the Law Firm continued to provide legal services to the Putnam County government.

16. From 2002 through July 2006, ATTORNEY #2 and the Law Firm made cash payments to VINCENT L. LEIBELL, III, the defendant, which payments constituted income to LEIBELL.

17. During the 2003 through 2006 calendar years, VINCENT L. LEIBELL, III, the defendant, received in excess of $43,000 in cash payments from ATTORNEY #1, ATTORNEY #2, and the Law Firm. Despite the fact that those payments constituted income, LEIBELL failed to report that income on the U.S. Individual Income Tax Returns, Form 1040, that LEIBELL caused to be prepared, subscribed, and filed with the IRS for the 2003 through 2006 tax years.

### Statutory Allegation

18. On or about the dates set forth below, in the Southern District of New York and elsewhere, VINCENT L. LEIBELL, III, the defendant, unlawfully, willfully and knowingly did make and subscribe U.S. Individual Income Tax Returns, Forms 1040, for the calendar years set forth below, which returns contained and were verified by the written declaration of LEIBELL that they were

made under penalties of perjury, and which returns LEIBELL did not believe to be true and correct as to every material matter, as set forth below:

| CALENDAR YEAR | RETURN FILING DATE | FALSE ITEM(S) |
|---|---|---|
| 2003 | 4/15/04 | Failed to report cash payments of at least $15,000 from ATTORNEY #1 and ATTORNEY #2 |
| 2004 | 4/15/05 | Failed to report cash payments of at least $18,000 from ATTORNEY #1 and ATTORNEY # 2 |
| 2005 | 4/15/06 | Failed to report cash payments of at least $5,000 from ATTORNEY #2 |
| 2006 | 4/15/07 | Failed to report cash payments of at least $5,000 from the Law Firm |

(Title 26, United States Code, Section 7206(1).)

*[signature]*
PREET BHARARA
United States Attorney